IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

|  |  |  |
|---|---|---|
| Carrie Adams, Laura Certeza, and Brian Ackerman, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Roper St. Francis Healthcare, Medical Society of South Carolina, and Bon Secours Mercy Health,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action<br>No. 2:25-cv-13409-BHH<br><br>**COMPLAINT**<br>**(FLSA Collective Action/Class Action under the S.C. Payment of Wages Act)**<br><br>**Jury Trial Requested** |

Named Plaintiffs Laura Certeza, Carrie Adams, and Brian Ackerman bring this action individually and on behalf of all current and former hourly employees with patient care responsibilities (collectively, "Named Plaintiffs and Putative Plaintiffs"), who worked for Roper St. Francis Healthcare ("RSFH") anywhere in South Carolina at any time during the relevant statutes of limitations, through the final disposition of this matter, to recover unpaid overtime compensation, liquidated damages, and attorneys' fees and costs pursuant to the provision of Sections 207 and 216(b) of the Fair Labor Standards Act of 1938 ("FLSA"), as amended 29 U.S.C. §§ 201–19, and unpaid non-overtime compensation, liquidated damages, and attorneys' fees and costs pursuant to the South Carolina Payment of Wages Act ("SCPWA" or "South Carolina Act"), S.C. CODE ANN. §§41-10-10, *et seq.*

1

# I.    OVERVIEW

1.    This is a collective action to recover overtime wages and liquidated damages brought pursuant to the FLSA and a class action pursuant to Fed. R. Civ. P. 23 under the state law of South Carolina to recover unpaid wages and other applicable penalties.

2.    Named Plaintiffs and Putative Plaintiffs are those similarly situated people who worked for Defendants at any time during the relevant time periods through the final disposition of this matter, who have not been paid for all hours worked nor the correct wages, including overtime in violation of state and federal law.

3.    Although Named Plaintiffs and the Putative Plaintiffs have routinely worked (and continue to work) in excess of forty (40) hours per workweek, Plaintiffs and the Putative Plaintiffs were not paid overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

4.    Likewise, Named Plaintiffs and the Putative Plaintiffs worked under forty (40) hours per workweek on occasion and were not fully compensated at their regular rate of pay for all hours worked.

5.    During the relevant time period(s), Defendants knowingly and deliberately failed to compensate Named Plaintiffs and Putative Plaintiffs for all hours worked each workweek and the proper amount of both straight time and overtime on a routine and regular basis.

6.    Specifically, Defendants' regular practice—including during weeks when Named Plaintiffs and the Putative Plaintiffs worked and recorded hours in excess of forty (40) (not counting hours worked "off-the-clock")—was (and is) to deduct a thirty (30) minute meal-period from Named Plaintiffs and the Putative Plaintiffs' daily time, even though they regularly performed compensable work, patient care, (and continue to perform) "off the clock" through their respective meal-period breaks.

2

7.     Defendants also paid (and continue to pay) the Named Plaintiffs and Putative Plaintiffs non-discretionary bonuses and shift differentials but failed (and continue to fail) to include the bonuses and shift differentials in the Named Plaintiffs and the Putative Plaintiffs' regular rates of pay for purposes of calculating and paying the correct rate of overtime compensation.

8.     Defendants also paid (and continue to pay) Named Plaintiffs and Putative Plaintiffs different hourly rates during their shifts but failed (and continue to fail) to use the blended rate method when calculating for the purpose of calculating and paying the correct rate of overtime compensation.

9.     Finally, Defendants employ an improper and non-neutral time rounding policy that, over time, fails to compensate the Named Plaintiffs and Putative Plaintiffs for all the time they have actually worked.

10.     The effect of Defendants' practices were (and are) that all compensable time worked by Named Plaintiffs and Putative Plaintiffs was not (and is not) counted and paid; thus, Defendants failed to properly compensate Named Plaintiffs and the Putative Plaintiffs for all hours worked and failed to properly calculate Named Plaintiffs and Putative Plaintiffs' straight time and overtime under the FLSA and applicable state law.

11.     Defendants knowingly and deliberately failed to compensate Named Plaintiffs and the Putative Plaintiffs for all hours worked and the proper amount of overtime on a routine and regular basis during the relevant time period(s).

12.     Named Plaintiffs and Putative Plaintiffs seek to recover all unpaid overtime compensation, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), and to recover all unpaid compensation, including straight time wages not otherwise recoverable under the FLSA during non-overtime workweeks, and other

3

damages owed under the state laws of South Carolina as a class action pursuant to Fed. R. Civ. P. 23.

13.     Named Plaintiffs also pray that all similarly situated workers receive notice of the pendency of this action which will apprise them of their rights and provide them with an opportunity to opt-in to this lawsuit.

14.     Plaintiffs also pray that the Rule 23 class is certified as defined herein, with Named Plaintiffs named as the Class Representatives.

## II.
## THE PARTIES

### A. Plaintiffs

15.     Named Plaintiff Carrie Adams ("Named Plaintiff Adams") was employed by Defendants as a non-exempt Licensed Practical Nurse from approximately July 11, 2023 until July 11, 2024. Named Plaintiff Adams did not receive compensation for all hours worked, including hours in excess of forty (40) hours per workweek. Her consent form is attached hereto as **Exhibit A** and is filed with this Complaint pursuant to 29 U.S.C. § 216(b).

16.     Named Plaintiff Laura Certeza ("Named Plaintiff Certeza") is currently employed by Defendants as a non-exempt emergency room staff nurse and charge nurse. Named Plaintiff Certeza began working for Defendants on or about July 14, 2008. Named Plaintiff Certeza did not receive compensation for all hours worked, including hours in excess of forty (40) hours per workweek. Her consent form is attached hereto as **Exhibit B** and is filed with this Complaint pursuant to 29 U.S.C. § 216(b).

17.     Named Plaintiff Brian Ackerman ("Named Plaintiff Ackerman") is currently employed by Defendants as a Registered Nurse. Named Plaintiff Ackerman began working for Defendants on or about November 20, 2023. Named Plaintiff Ackerman did not receive

4

compensation for all hours worked, including hours in excess of forty (40) hours per workweek. His consent form is attached hereto as **Exhibit C** and is filed with this Complaint pursuant to 29 U.S.C. § 216(b).

## B. Defendants

18.     Defendant Roper St. Francis Healthcare is a non-profit organization registered in South Carolina. Process may be served on RSMH's registered agent Corporation Service Company at 508 Meeting Street, West Columbia, South Carolina 29169.

19.     Defendant Medical Society of South Carolina ("MSSC") is a non-profit organization that is registered in South Carolina. Process may be served on MSSC's registered agent Charles F. Rivers III at 69-B Barre Street, Charleston, South Carolina 29401.

20.     Defendant Bon Secours Mercy Health, Inc. ("Bon Secours") is a foreign non-profit organization incorporated in Maryland.[1] Process may be served on Bon Secours' registered agent, Corporation Service Company, at 508 Meeting Street, West Columbia, South Carolina 29169.

## II.    JURISDICTION & VENUE

21.     This Court has federal question jurisdiction over this case pursuant to 28 U.S.C. §1331 as this is an action arising under the FLSA, 29 U.S.C. §§ 201–19.

22.     This Court has supplemental jurisdiction over the South Carolina state law claims pursuant to 28 U.S.C. § 1367.

23.     Named Plaintiffs and Putative Plaintiffs have not entered into an arbitration agreement that would affect the Court's subject-matter jurisdiction.

---

[1] *Bon Secours Mercy Health, Inc.*, South Carolina Secretary of State, https://businessfilings.sc.gov/BusinessFiling/Entity/Profile/4c04eab2-a9b6-426d-96f9-d7a72505f8d2

24.     This Court has general personal jurisdiction over Bon Secours because they jointly own and operate RSFH with MSSC in this Court's judicial District.

25.     This court has general personal jurisdiction over RSFH, who is incorporated in South Carolina, because their corporate headquarters are located at 316 Calhoun Street, Charleston, SC 29401

26.     This Court has general personal jurisdiction over MSSC because their corporate headquarters are located at 69 Barre St. b., Charleston, SC 29401.

27.     Venue is proper in the Charleston Division of the District of South Carolina pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this Court's judicial district.

### III.    BACKGROUND FACTS

28.     Defendant Roper St. Francis Healthcare is a "not-for-profit healthcare system" who is "the Lowcountry's largest private employer" with "four flagship hospitals…six strategically placed emergency departments…[and] nearly 7,000 teammates."[2] They manage five (5) hospitals; ten (10) Express Care/Walk-in Care facilities; six (6) Emergency Rooms; five (5) Hematology and oncology departments; fourteen (14) labs; two (2) senior centers; and one (1) occupational medicine facility in four counties of South Carolina.[3] They also have one hundred and twelve (112) physician partners.[4]

29.     Defendant RSFH is jointly owned by the Medical Society of South Carolina and Bon Secours Mercy Health.[5]

---

[2] *About Us: Who We Are*, rsfh.com, https://www.rsfh.com/about/ (last visited Oct. 7, 2025).
[3] *Id.*; *Find a Location*, rsfh.com, https://www.rsfh.com/locations/ (last visited Oct. 7, 2025).
[4] *Id.*
[5] *Strategic Plan 2030*, rsfh.com,
https://www.rsfh.com/about/2030/#:~:text=It%20marks%20a%20significant%20milestone,Franc
is%20Healthcare%20in%20late%202019 (last visited Oct. 7, 2025).

30.    Defendant Medical Society of South Carolina ("MSSC") is a non-profit organization that "has served as the foremost association of physicians" with a "partnership with the Roper St. Francis Healthcare System."[6]

31.    MSSC has a "[m]ajority ownership in the growing Roper St. Francis Healthcare system."[7]

32.    Defendant Bon Secours is one of the top five (5) Catholic health systems in the United States who operates more than fifty (50) hospitals.[8]

33.    Defendant Bon Secours operates hospitals in seven states: New York, Ohio, Kentucky, Maryland, Virginia, South Carolina, and Florida.[9]

34.    Defendant Bon Secours operates "hospitals; freestanding emergency departments; specialty and primary care locations; lab facilities; and imaging centers."[10]

A.    **Defendants Are Joint Employers**

35.    Defendants are joint employers pursuant to federal and state law.

36.    Defendants are integrated companies that share customers, properties, employees, and all other assets.

---

[6] *About*, medsocietysc.com, https://www.medsocietysc.com/about/ (last visited Oct. 7, 2025).
[7] *The Benefits of Membership*, medsocietysc.com, http://medsocietysc.com/become_member/ (last visited Oct. 8, 2025).
[8] *Who We Are*, bsmhealth.org, https://bsmhealth.org/who-we-are/ (last visited Oct. 7, 2025); *Why Bon Secours Mercy Health*, bsmhealth.org, https://physiciancareers.bsmhealth.org/Creative/why (last visited Oct. 7, 2025).
[9] *Our Brands*, bsmhealth.org, https://bsmhealth.org/our-brands/ (last visited Oct. 8, 2025)
[10] *Id.*

37.     Defendants Bon Secours and MSSC are the ultimate legal parents of Defendants RSFH and all other facilities it operates and does business as, including medical facilities not currently named as defendants.[11]

38.     Defendants Bon Secours and MSSC have the power to hire[12] and fire any and all of RSFH's employees and employees of any of RSFH's subsidiaries.

39.     On information and belief, Defendants Bon Secours and MSSC made the decision for its subsidiaries and affiliates—including but not limited to Defendant RSFH—to pay bonuses and shift differentials to the Named Plaintiffs and Putative Plaintiffs and to not include them in their regular rate of pay for purposes of calculating their correct overtime rates.

40.     On information and belief, Defendants Bon Secours and MSSC also created for its subsidiaries and affiliates—including but not limited to Defendant RSFH—the automatic meal break policy and time rounding policies at issue in this matter and made the decision for its subsidiaries and affiliates—including but not limited to Defendant RSFH—to utilize those policies in ways that underpaid the Plaintiff and Putative Plaintiffs.

41.     Defendant Bon Secours and MSSC maintain employment records for their subsidiaries and affiliates including, but not limited to, Defendant RSFH's direct employees.

42.     Specifically, Bon Secours and MSSC control the HR Department which maintains all the employment records for its subsidiaries and affiliates including, but not limited to, the employment records for Defendant RSFH's employees.

---

[11] *Strategic Plan 2030*, rsfh.com,
https://www.rsfh.com/about/2030/#:~:text=It%20marks%20a%20significant%20milestone,Franc is%20Healthcare%20in%20late%202019 (last visited Oct. 7, 2025).
[12] *See, e.g., Rheumatology physician position available in beautiful Charleston, SC*,
bsmhealth.org, https://physiciancareers.bsmhealth.org/search/jobdetails/rheumatology-physician-opportunity-in-beautiful-charleston-sc/f80fad02-8b3f-48fe-b521-173a54c88941 (last visited Oct. 8, 2025).

43.     Defendants Bon Secours and MSSC manage key internal relationships with Defendants. Defendants Bon Secours and MSSC direct the financials of its subsidiaries and affiliates including, but not limited to, Defendant RSFH and controls the pay, hours and schedules of Named Plaintiffs and the Putative Plaintiffs.

44.     Moreover, both Defendants have (or had) the power to hire and fire Named Plaintiffs and the Putative Plaintiffs; supervise and control Named Plaintiffs and the Putative Plaintiffs' work schedules and conditions of employment; determine their rate and method of payment; and jointly maintain their employment records.

45.     As a result, Defendants are responsible, both individually and jointly, for compliance with all the applicable provisions of the FLSA, and South Carolina state law with respect to the entire employment for the workweeks at issue in this case.

**B.     Named Plaintiffs and Putative Plaintiffs Are Similarly Situated**

46.     To provide their services, Defendants employed (and continue to employ) numerous non-exempt hourly employees with patient care responsibilities—including Named Plaintiffs and the individuals that make up the putative collective and classes.

47.     Named Plaintiffs and the Putative Plaintiffs were employed by Defendants as non-exempt Nurses who were not paid for all hours worked, including hours worked in excess of forty (40) hours each workweek.

48.     Named Plaintiffs and Putative Plaintiffs were responsible for the care and well-being of Defendants' patients.

49.     While exact job titles may differ, these hourly employees were subjected to the same or similar illegal pay practices for similar work. Importantly, none of the FLSA exemptions relieve covered employers (such as Defendants) of the statutory duty to pay their employees

overtime at one and one-half (1 ½) times the regular rate of pay apply to Named Plaintiffs or the Putative Plaintiffs.

50.     Named Plaintiffs and the Putative Plaintiffs are similarly situated because they typically worked (and continue to work) schedules that required them to work more than forty (40) hours in a workweek.

51.     Named Plaintiffs and the Putative Plaintiffs are similarly situated because the Defendants automatically deducted thirty (30) or sixty (60) minutes for employees' lunches, even though these breaks were regularly interrupted by work.

52.     Furthermore, Named Plaintiffs and the Putative Plaintiffs are similarly situated because the Defendants suffered or permitted them to work "off-the-clock" before and after the start of their shifts.

53.     Named Plaintiff and the Putative Plaintiffs are similarly situated with respect to their job duties; their pay structure; and the policies and practices of Defendants resulting in FLSA and state law violations.

54.     Named Plaintiff and the Putative Plaintiffs are similarly situated with respect to their job duties since they all provided health care services to patients at Defendants' facilities.

55.     Named Plaintiff and the Putative Plaintiffs are similarly situated with respect to their pay structure in that they are all paid on an hourly basis; receive non-discretionary bonuses; have their time rounded; and Defendants automatically deduct thirty (30) minutes for a meal period each shift.

56.     Plaintiff and the Putative Plaintiffs are similarly situated with respect to Defendants' policies (and practices) resulting in the complained of FLSA and state law violations.

10

## C.     Unpaid Meal Breaks

57.     Defendants have a policy whereby they automatically deduct one thirty (30) minute meal period from Named Plaintiffs' and Putative Plaintiffs' daily time.

58.     Defendants' Meal Break policy is a per se violation of the FLSA in that it requires Named Plaintiffs and Putative Plaintiffs to not report that they did not get a bona fide thirty (30) minute meal break if they worked by performing patient care for up to and including ten (10) minutes of their unpaid lunch.

59.     Defendants' automatic thirty (30) minute meal period deduction resulted (and continues to result in) Named Plaintiffs and Putative Plaintiffs working straight time hours and overtime hours for which they were and (are not) compensated at the rates required by the FLSA. As applied, Defendant's policy also results in unpaid compensation under state law for weeks when the forty hour threshold was not met.

60.     Defendant was (and continues to be) aware that Named Plaintiff and the Putative Plaintiffs regularly worked (and continue to work) through their meal periods without pay in violation of the FLSA.

61.     Defendants knew Named Plaintiffs and Putative Plaintiffs did not take breaks because Named Plaintiffs and Putative Plaintiffs informed their supervisors that they regularly did not take a meal break.

62.     As a result of Defendants' failure to compensate Named Plaintiffs and Putative Plaintiffs for compensable work performed "off the clock," such as during their unpaid meal break, Named Plaintiffs and Putative Plaintiffs worked straight time hours and overtime hours for which they were not compensated at the rates required by the FLSA.

**D.      Defendants Failed to Include Non-Discretionary Bonuses in the Regular Rate**

63.      Defendants also paid out non-discretionary bonuses and shift differentials based on set criteria but failed to include these bonuses and shift differentials in Named Plaintiffs and Putative Plaintiffs' regular rates of pay.

64.      The non-discretionary bonuses and shift differentials were based upon pre-determined criteria established by Defendants.

65.      When Named Plaintiff and Putative Plaintiffs met the criteria, they were entitled to receive these non-discretionary bonuses and shift differentials.

66.      Pursuant to 29 C.F.R. § 778.209, these non-discretionary bonuses (and any other non-discretionary compensation) should have been included in Named Plaintiffs and Putative Plaintiffs' regular rates of pay before any and all overtime multipliers were applied.

**E.      Defendants Failed to Blend the Various Hourly Rates Worked During a Workweek**

67.      During the Relevant Time Period, Defendants deemed certain hours in a workweek to be "Critical Staffing" hours and incentivized Named Plaintiffs and Putative Plaintiffs to work times they were not scheduled to work or remain on shift after their shift ended.

68.      Defendants established different, increased hourly rates for work other than Named Plaintiffs and Putative Plaintiffs' scheduled work as an incentive to work critical staffing hours based on the level of Defendants' staffing needs.

69.      Instead of blending the different rates Plaintiffs and Putative Plaintiffs worked in a workweek for the purposes of paying overtime, Defendants created a fiction that the increased hourly rate for incentivized critical staffing hours were "shift differentials."

70.      Defendants are required by 29 C.F.R. § 778.115 to add up all of the compensation during the workweek from all such rates and then divide by the total number of hours worked at

all hourly classifications to arrive at the blended rate from which Defendant would use to calculate the regular rate.

71. Defendants treated the various hourly rates as shift differentials, in violation of the FLSA, and included them with the lawful shift differentials when calculating the regular rate. This violation permitted Defendants to add the shift differential to Named Plaintiff and Putative Plaintiffs' hourly rate—instead of the blended, weighted hourly rate—to determine the regular rate.

**F.    Improper Non-Neutral Rounding Policy**

72. Defendants employ a policy that rounds Named Plaintiff and Putative Plaintiffs' clock-in and clock-out times to the nearest fifteen-minute increment.

73. For example, when a Named Plaintiff or Putative Plaintiff clocks in at 6:38 a.m., Defendants round their time up to 6:45 a.m., resulting in Named Plaintiff or Putative Plaintiff not being paid for the seven (7) minutes of work performed from 6:38 a.m. to 6:45 a.m.

74. Similarly, should Named Plaintiff or Putative Plaintiff clock in at 6:46 a.m., Defendant would round their time down to 6:45 a.m. and Named Plaintiff or Putative Plaintiff would be paid for one (1) extra minute.

75. To be valid, rounding policies must ensure that over a period of time an employee is "fully compensated for all the time they have actually worked." 29 C.F.R. § 785.48(b). This policy must be "facially neutral" and "on average, favors neither overpayment nor underpayment." *Hardy v. Lewis Gale Medical Center, LLC*, 377 F.Supp.3d 596, 614 (W.D. Virginia 2019).

76. Defendants' rounding policy is not neutral on its face or in its application because Named Plaintiffs and Putative Plaintiffs are told to clock in and clock out during times that are rounded off and that they are subject to discipline should they clock in or out during a time that

would benefit them. As a result, Named Plaintiffs and Putative Plaintiffs clock in and out during time periods that round against them and benefit Defendants.

77.     Specifically, Defendants' policies state their employees may clock in up to seven (7) minutes prior to their shift start time (which rounds against them) but are subject to discipline should they clock in eight (8) minutes early (which would round in their favor).

78.     Defendants' policies also state employees are subject to discipline in the form of an occurrence should they clock in even one (1) minute after the start of their shift starts (which would round in their favor).

79.     Read together, Defendants' policies contain a facially non-neutral rounding policy. Employees are encouraged to clock in only during times in which their work is rounded down, benefiting Defendants. Employees are further discouraged—and disciplined—for clocking in during times that rounding would benefit them.

80.     Named Plaintiffs and Putative Plaintiffs were also regularly told by their supervisors that they must clock in no later than five (5) minutes prior to their shift start time.

81.     Defendants encouraged early clock in times because, prior to the start of a shift, the Named Plaintiffs and Putative Plaintiffs typically have shift hand off. During a shift handoff, the nurse being relieved of duty informs the reliving nurse—Named Plaintiffs or Putative Plaintiffs—of the status of their assigned patients and duties.

82.     Clocking in several minutes prior to the shift start time facilitates employees' shift hand off as it allows Named Plaintiffs and Putative Plaintiffs to know the status of their patients and work.

83.     As most shifts started fifteen minutes from the top of the hour, this policy resulted in Named Plaintiffs and Putative Plaintiffs regularly clock in in five (5) to seven (7) minutes

before the nearest fifteen-minute increment of time, and lose those five (5) to seven (7) minutes of work nearly every shift.

84.     Defendants' employees are not permitted to clock in eight (8) minutes or more before their shift.

85.     Clocking in eight (8) or more minutes before their shift start time would result in Defendants crediting Named Plaintiffs and Putative Plaintiffs for extra time.

86.     Named Plaintiffs and Putative Plaintiffs regularly lost five (5) to seven (7) minutes of work time each shift and rarely ever gained time as a result of Defendants' rounding policy.

87.     These policies also apply similarly to clock out times. Named Plaintiffs and Putative Plaintiffs were (and continue to be) told they can clock out no more than eight (8) minutes after their shift end time—which rounds in Defendants' favor.

88.     Named Plaintiffs and Putative Plaintiffs were also told they were not allowed to clock out even one (1) minute before their shift end time—which would have rounded in their favor.

89.     Because of these policies and directives from Defendants, Named Plaintiffs and Putative Plaintiffs typically clocked in during times in which the rounding policy worked against them.

90.     In its application, Defendants' rounding policy resulted in the failure over time to compensate Named Plaintiffs and Putative Plaintiffs for all hours actually worked—both compensable overtime hours and straight time hours.

91.     As a result of Defendants' rounding policy and its failure to compensate Named Plaintiffs and Putative Plaintiffs for compensable work performed during their shift, Named Plaintiffs and Putative Plaintiffs worked straight time hours and overtime hours for which they were not compensated at the rates required by the FLSA.

92.     Specifically, when Named Plaintiffs and Putative Plaintiffs worked three (3) twelve-hour shifts in a week and did not receive a meal break during any shift and had their compensable work hours rounded down, Defendants' policies resulted in Named Plaintiff and the Putative Plaintiffs not being paid for one and one-half (1 ½) to two (2) hours of compensable straight time work.

93.     When Named Plaintiffs and Putative Plaintiffs worked four (4) twelve-hour shifts in a week and did not receive a meal break during any shift and had their compensable work hours rounded down, Defendants' policies resulted in Named Plaintiffs and Putative Plaintiffs not being paid for two (2) to two and one-half hours (2 ½) of compensable overtime work.

94.     Defendants knew or should have known that they were not (and are not) compensating Named Plaintiffs and Putative Plaintiffs for the proper amount of overtime compensation in violation of the FLSA.

95.     Defendants' actions therefore constitute willful violations under the law and were not made in good faith.

96.     Defendants' failure to compensate Named Plaintiffs and Putative Plaintiffs overtime compensation at a rate of one and one-half (1 ½) times their regular rates of pay violated (and continues to violate) the FLSA.

97.     Defendants knew or should have known that they were not (and are not) compensating Named Plaintiffs and Putative Plaintiffs for the proper amount of overtime compensation in violation of the FLSA.

98.     Defendants knew or should have known that their failure to pay the correct amount of straight time and overtime to Named Plaintiffs and Putative Plaintiffs would cause, did cause, and continues to cause financial injury to Named Plaintiffs and Putative Plaintiffs.

99.     Because Defendants did not pay Named Plaintiffs and Putative Plaintiffs time and a half for all hours worked in excess of forty (40) in a workweek, Defendants' pay policies and practices willfully violated (and continue to violate) the FLSA. This is evidenced by previous lawsuits filed against Defendants—*Barrett v. Bon Secours St. Francis Xavier Hospital, Inc, et al.*, No. 2:17-cv-2298 (D.S.C. July 31, 2018); *Stanley v. Roper St. Francis Mount Pleasant Hospital, et al.*, No. 2:20-cv-4505 (D.S.C. Aug. 10, 2022); *Davis v. Bon Secours Mercy Health, Inc.*, No. 1:24-cv-330 (S.D. Ohio March 19, 2025)—in which hourly employees raised similar claims against Defendants. Defendants have continued their illegal practices and policies and, as a result, they are in willful violation of the FLSA and applicable state laws.

100.    Because Defendants did not pay Named Plaintiffs and Putative Plaintiffs for all straight time worked, including in workweeks when they worked less than forty hours, Defendants' pay policies and practices violated (and continue to violate) applicable state laws.

101.    Because Defendants did not pay the Named Plaintiffs and Putative Plaintiffs for all hours worked, Defendant failed to provide accurate wage statements as required by the SCPWA. Specifically, Named Plaintiffs and Putative Plaintiffs wage statements did not show all hours worked.

102.    Plaintiffs and Putative Plaintiffs seek to recover all unpaid overtime, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), and all unpaid straight time not otherwise recoverable under the FLSA and relevant penalties pursuant to applicable state law.

## IV.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION
(Collective Action Alleging FLSA Violations)

**A. FLSA Coverage**

103.    The preceding paragraphs are incorporated as though fully set forth herein.

104.    The "Employees Entitled to Notice" are defined as:

> **All current and former hourly employees with patient care responsibilities of Roper St. Francis Healthcare and the Medical Society of South Carolina at any time within three (3) years preceding the commencement of this action through the final disposition of this matter and who did not sign an arbitration agreement.**

105.    At all times material to this Complain, Defendants have been joint employers within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

106.    At all times material to this Complaint, Defendants were an enterprise within the meaning of 3(r) of the FLSA, 29 U.S.C. § 203(r).

107.    At all times material to the complaint, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that that enterprise has had, and has, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

108.    Specifically, Defendants operate medical facilities and treat patients from across the United States; transport materials through commerce and on the interstate highways; and

conduct transactions through commerce, including the use of credit cards, phones, and/or cell phones, electronic mail, and the internet.

109.    During respective periods of Named Plaintiff and the Employees Entitled to Notice's employment by Defendants, these individuals provided services for Defendants that involved interstate commerce (as described above) for purposes of the FLSA.

110.    In performing work for Defendants, Named Plaintiffs and the Employees Entitled to Notice were engaged in commerce or in the production of goods for commerce within the meaning of §§ 203(b), 203(i), 203(j), 206(a), and 207(a) of the FLSA. 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

111.    Specifically, Named Plaintiffs and the Employees Entitled to Notice are (or were) hourly employees who assisted Defendants' customers and employees throughout the United States. 29 U.S.C. § 203(j).

112.    The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee and personnel records of Defendants.

**B.  Failure to Pay Wages and Overtime Under The FLSA**

113.    Defendants violated the FLSA, 29 U.S.C. §§ 207 and 215(a)(2), by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such non-exempt employees for all the hours they worked in excess of forty (40) hours per week at rates at least one and one-half (1 ½) times the regular rates for which they were employed.

114.    Moreover, Defendants knowingly, willfully, and with reckless disregard carried out their illegal pattern of failing to pay Named Plaintiffs and other similarly situated employees the proper amount of overtime compensation for all hours worked over forty (40) each week. 29 U.S.C. § 255(a).

19

115.   Defendants knew or should have known their pay practices were in violation of the FLSA.

116.   Defendants are sophisticated parties and employers and therefore knew (or should have known) their pay policies were in violation of the FLSA.

117.   Named Plaintiffs and the Employees Entitled to Notice, on the other hand, are (and were) unsophisticated employees who trusted Defendants to pay them according to the law.

118.   The decision and practice by Defendants to not pay Named Plaintiffs and the Employees Entitled to Notice overtime for all hours worked over forty (40) each week was willful and was not reasonable or in good faith.

119.   Accordingly, Named Plaintiffs and the Employees Entitled to Notice are entitled to be paid overtime wages for all hours worked in excess of forty (40) hours per workweek pursuant to the FLSA in an amount equal to one and one half (1 ½) times their regular rate of pay, plus liquidated damages, attorneys' fees, and costs.

## C. Collective Action Allegations

120.   All previous paragraphs are incorporated by reference as though fully set forth herein.

121.   Pursuant to 29 U.S.C. § 216(b), Named Plaintiffs bring this action collectively on behalf of Defendants' employees who are (or were) similarly situated to Named Plaintiffs with regard to the work they performed and the manner in which they were paid.

122.   Other similarly situated employees of Defendants have been victimized by Defendants' patterns, practices, and policies, which are in willful violation of the FLSA.

123.   Defendants' failure to pay Named Plaintiffs and the Employees Entitled to Notice overtime compensation at the rates required by the FLSA, results from generally applicable

policies and practices of Defendants, and does not depend on the personal circumstances of Named Plaintiffs or the Employees Entitled to Notice.

124.     Therefore, Named Plaintiffs' experiences are typical of the experiences of Employees Entitled to Notice.

125.     The specific job titles or precise job requirements of the various employees Entitled to Notice does not prevent collective treatment.

126.     All the Employees Entitled to Notice—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated their overtime wages for all hours worked in excess of forty (40) each week.

127.     Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

128.     Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of their classes and provide for judicial consistency.

129.     Accordingly, notice of this action should be promptly sent to the similarly situated Employees Entitled to Notice identified in paragraph 105.

<u>**SECOND CAUSE OF ACTION**</u>
**(Class Action Alleging Violations of the SCPWA)**

**A.     SCPWA Coverage**

130.     All previous paragraphs are incorporated by reference as though fully set forth herein.

132.     At times material to this Complaint, Defendants have each been an "employer" as defined by the SCPWA. S.C. CODE ANN. § 41-10-10(1).

133.    At all times material to the Complaint, Named Plaintiffs and Employees Entitled to Notice were "employed" by Defendants as defined within the SCPWA. S.C. CODE ANN. §§ 41-10-10 to 110.

134.    At all times material to the Complaint, Named Plaintiffs, and the Employees Entitled to Notice are "employees" within the meaning of the SCPWA and are not free from the control and direction of Defendants.

## B.    FAILURE TO PAY WAGES IN ACCORDANCE WITH THE SCPWA

135.    All previous paragraphs are incorporated by reference as though fully set forth herein.

136.    During the course of their employment, Defendants agreed to pay Named Plaintiffs, and Employees Entitled to Notice "wages" as defined in the SCPWA to compensate them for labor rendered to Defendants. S.C. CODE ANN. § 41-10-10(2).

137.    Named Plaintiffs, and the Employees Entitled to Notice accepted Defendants' offer.

138.    The SCPWA requires employers, like Defendants, to "notify each employee in writing at the time of hiring of the normal hours and wages agreed upon, the time and place of payment" and the "employer shall furnish each employee with an itemized statement showing his gross pay and the deductions made from his wages for each pay period." S.C. CODE ANN. § 41-10-40(C).

139.    The SCPWA also provides employers, like Defendants, "shall not withhold or divert any portion of the employee's wages unless the employer is required or permitted to do so by state or federal law." S.C. CODE ANN. § 41-10-40(C).

140.    Further, "any changes [to] the terms [of wages] must be made in writing at least seven calendar days before they become effective." S.C. CODE ANN. § 41-10-30(A).

141.    In violation of the SCPWA, Defendants willfully failed to provide Named Plaintiffs and the Employees Entitled to Notice, at the time of their hiring, proper notice of the normal hours and wages agreed upon and the time and place of payment, nor did Defendants provide them with compliant wage statements for each of their pay periods as required by law because the notice and wage statements failed to include hours worked off the clock due to Defendants' automatic meal break deductions and time rounding policies, and failed to display the correct rates of pay.

142.    Defendants also willfully failed to pay Named Plaintiffs and the Employees Entitled to Notice all compensation for "wages" due and owing to them, in violation of the SCPWA. S.C. CODE ANN. § 41-10-10(2).

143.    Additionally, Defendants failed to provide Named Plaintiffs and the Employees Entitled to Notice with at least seven days' advance written notice of the deductions or the amounts of the deductions that it made to their paychecks.

144.    Defendants have withheld wages of Named Plaintiffs and the Employees Entitled to Notice without providing advance notice of such amounts and absent any lawfully sufficient reason for such conduct.

145.    In violating the SCPWA, Defendants acted willfully, without a good faith basis, and with reckless disregard of clearly applicable South Carolina law.

146.    As a direct and proximate result of Defendants' willful conduct, Named Plaintiffs and the Employees Entitled to Notice have suffered substantial losses, and continue to suffer substantial losses, and have been deprived of compensation to which they are entitled damages, including monetary damages in the amount of three (3) times the amount of their unpaid wages as well as costs and reasonable attorneys' fees pursuant to the SCPWA. S.C. CODE ANN. § 41-10-80.

147.    Defendants are in possession and control of necessary documents and information from which Named Plaintiffs would be able to precisely calculate damages.

148.     The proposed class of putative class members sought to be certified pursuant to the SCPWA is defined in Paragraph 105.

149.     The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Defendants.

## C.     SCPWA CLASS ALLEGATIONS

150.     Named Plaintiffs and the Employees Entitled to Notice bring their SCPWA claim as a class action pursuant to Fed. R. Civ. P. 23 on behalf of all similarly situated individuals employed by Defendants to work in South Carolina at any time in the three years prior to the date of the filing of this action.

151.     Class action treatment of Named Plaintiffs and the Employees Entitled to Notice's claims is appropriate because, as alleged below, all of Rule 23's class action requisites are satisfied.

152.     The number of Employees Entitled to Notice is so numerous that joinder of all class members is impracticable.

153.     Named Plaintiffs' South Carolina state-law claims share common questions of law and fact with the claims of the Employees Entitled to Notice.

154.     Named Plaintiffs' claims are typical of the claims of other Employees Entitled to Notice, and they have no interests that are antagonistic to or in conflict with the interests of other Employees Entitled to Notice.

155.     Named Plaintiffs and their counsel will fairly and adequately represent the Employees Entitled to Notice and their interests.

156.     Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

157.    Accordingly, the South Carolina Class should be certified as defined in Paragraph 105.

## VI. RELIEF SOUGHT

WHEREFORE, Named Plaintiffs on behalf of themselves and the Putative Plaintiffs, pray that this Court enter an Order the following relief:

A.  Sending Court Supervised Notice to the FLSA Employees Entitled to Notice as defined herein and requiring Defendants to provide the names, addresses, email addresses, telephone numbers, and social security numbers of all putative collective action members;

B.  Issuing proper Notice to the Employees Entitled to Notice;

C.  Finding Defendants liable for unpaid wages, including unpaid overtime wages, due to Named Plaintiffs and Employees Entitled to Notice, pursuant to § 216(b) of the FLSA; and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiffs and Employees Entitled to Notice who join in the suit;

D.  Certifying the class as defined in paragraph 105; and designating Named Plaintiffs as Representatives of the class;

E.  Awarding Named Plaintiffs and the Employees Entitled to Notice damages for unpaid wages not otherwise recoverable under the FLSA and all other damages allowed by South Carolina state law;

F.  Awarding the costs of this action;

G.  Awarding attorneys' fees;

H.  Awarding pre-judgment and post-judgment interest at the highest rates allowed by law;

I.  Awarding Named Plaintiffs service awards as permitted by law;

J.  Compelling the accounting of the books and records of Defendants; and Defendants' expenses (should discovery prove inadequate); and

K.  Granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

*/s/ J. Scott Falls*
J. Scott Falls (Federal ID No. 10300)
scott@falls-legal.com
Ashley L Falls (Federal ID No. 12083)
ashley@falls-legal.com
FALLS LEGAL, LLC
125-E Wappoo Creek Drive, Suite 102
Charleston, SC 29412
Telephone: (843) 737-6040
Fax: (843) 737-6140

Robert E. DeRose* (OH Bar No. 0055214)
bderose@barkanmeizlish.com
Nickole K. Iula* (OH Bar. No. 0099895)
niula@barkanmeizlish.com
Anna R. Caplan* (OH Bar No. 0104562)
acaplan@barkanmeizlish.com
BARKAN MEIZLISH DEROSE COX, LLP
4200 Regent Street, Suite 210
Columbus, OH 43219
Phone: (614) 221-4221
Facsimile: (614) 744-2300

Clif Alexander* (Texas Bar No. 24064805)
clif@a2xlaw.com
Austin W. Anderson* (Texas Bar No. 24045189)
austin@a2xlaw.com
Carter T. Hastings* (Texas Bar No. 24101879)
carter@a2xlaw.com
ANDERSON ALEXANDER, PLLC
101 N. Shoreline Blvd, Suite 610
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284
* *pro hac vice* application forthcoming

*Attorneys for Plaintiffs*

Charleston, South Carolina
November 14, 2025